**Michael E. Haglund**, OSB No. 772030
email: mhaglund@hk-law.com
**Michael K. Kelley**, OSB No. 890654
Email: kelley@hk-law.com
**HAGLUND KELLEY JONES
    & WILDER, LLP**
200 SW Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| **GREGER PACIFIC MARINE, INC.**, a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>**OREGON OFFSHORE TOWING, INC.**, an Oregon corporation,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT (28 U.S.C. § 1332)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

### PARTIES AND JURISDICTION

1.      This is an action to recover for the loss of two barges owned by plaintiff Greger Pacific Marine, Inc. while being towed by defendant Oregon Offshore Towing, Inc. from Pearl Harbor, Hawaii to San Francisco, California. As a direct result of defendant's gross negligence, both barges sunk on separate days in the Pacific Ocean.

2. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction by virtue of diversity of citizenship between the parties and the amount in controversy exceeding $75,000.

3. Plaintiff Greger Pacific Marine, Inc. is a California corporation with its principal place of business in California and is engaged in the business of owning, operating and chartering towboats, barges and other floating equipment.

4. Defendant Oregon Offshore Towing, Inc. is an Oregon corporation with its principal place of business in Oregon and is engaged in the business of offshore towing.

## FACTS

5. In August, 2012, plaintiff and defendant entered into negotiations contemplating a contract under which defendant would tow two barges owned by plaintiff from their location in Pearl Harbor, Hawaii to San Francisco Bay, specifically Vallejo, California. The form of contract was prepared by defendant setting out a lump sum price for the proposed towage. That form of agreement was initially signed by plaintiff, but, before it was fully executed, defendant proposed a substantial change in towage compensation that was never agreed to by the parties. Defendant's towboat departed Pearl Harbor with both of plaintiff's barges in tow without any meeting of the minds on a towage contract.

6. Defendant's tug departed Pearl Harbor, Hawaii on September 4, in sunny, calm conditions as depicted in the aerial photographs attached as Exhibit A. Plaintiff's DB-560 Barge, a 60-foot by 120-foot derrick barge equipped with a large crane, was in the first position being towed by defendant's Tug Ocean Eagle. Plaintiff's Weeks 243 Barge, 68 feet wide and 175 feet in length and containing a variety of equipment secured on deck, was in the second position in the tandem towing arrangement.

7. Within the first day after the towboat and her flotilla of two barges was underway, defendant made a new proposal regarding towage compensation, complaining that the price needed to be further adjusted because the anticipated average towage speed of 6.5 knots per hour was not being achieved and the flotilla was in fact travelling at a speed of approximately 4.5 knots per hour.

8. Throughout what became a disastrous voyage, defendant's towboat and the flotilla of plaintiff's two barges did not encounter any storm or unusual wind, wave or swell conditions.

9. Within 24 hours after departing Pearl Harbor and within approximately 20 miles of Oahu, defendant's first mate observed that the Weeks 243 Barge appeared to be listing. He reported this to the captain, but rather than reporting the matter to the Coast Guard and returning to Hawaii, the captain continued to make way at the same speed and directed that the towboat to maintain that speed throughout the night.

10. The next day, the crew discovered that the Weeks 243 Barge was standing on one end in the ocean with approximately half of her 175-foot length fully submerged. The captain then ordered that the tow wires to both barges be severed. Within a few hours after the cutting of those tow wires, plaintiff's Weeks 243 Barge sank approximately 39 miles offshore of Hawaii.

11. Defendant did not report the casualty to the Coast Guard. Instead, the defendant connected a new line to the DB-560 Barge and recommenced the tow across the Pacific. Eight days later, the DB-560 Barge appeared to be taking on water. Again, without contacting the Coast Guard, defendant's captain ordered the tow wire severed, took no action to investigate the source of the seawater causing the barge to list and watched her sink to the bottom of the Pacific Ocean.

## FIRST CLAIM FOR RELIEF

### (Gross Negligence)

12. Plaintiff realleges paragraphs 1 through 11.

13. Defendant and/or its agents acted willfully, recklessly, and/or with gross negligence in causing the complete loss of the plaintiff's two barges in the following particulars:

   a. Sailing without a properly licensed crew;

   b. Towing the larger barge aft in the tandem tow when it should have been in the forward position;

   c. Directing the speed of the tow from defendant's Coos Bay office by defendant's President rather than exercising prudent seamanship and adjusting the speed to the conditions being encountered in the Pacific Ocean;

   d. Failing to notify the Coast Guard as required by regulation when the Weeks 243 Barge began to list.

   e. Failing to turn around and return to Hawaii when the Weeks 243 Barge appeared to be listing within the first day following departure from Pearl Harbor;

   f. Severing both tow wires and thus creating an uncontrolled situation where the two barges could collide with each other rather than severing only the line connected to the Weeks 243 Barge;

   g. Failing to report the loss of the Weeks 243 Barge to the Coast Guard after the barge sank;

   h. Failing to have adequate equipment aboard the Tug Ocean Eagle, specifically an Orville hook, which would have been enabled the tow boat to retrieve the severed line to the DB-560 Barge;

   i. Recommencing the tow of the DB-560 Barge rather than returning to Hawaii and towing that barge at an excessive speed;

   j. Failing to call the Coast Guard as required by regulation when the DB-560 Barge appeared to be in trouble;

14. As a result of defendant's willfulness, recklessness, and/or gross negligence, plaintiff suffered the complete destruction and loss of its barges and equipment. Plaintiff's Weeks 243 Barge had a market value of $650,000 plus equipment with a value of $50,000. Plaintiff's DB-560 Barge had a market value of $550,000 and equipment with a value of $100,000. All total, plaintiff suffered compensatory damages of $1.35 million.

15. In order to deter defendant and others from engaging in the willful, reckless and/or grossly negligent conduct that caused the loss of plaintiff's marine equipment, defendant should be assessed punitive damages. Specifically, for the loss of the first barge, plaintiff should be awarded one times the value of the Weeks 243 Barge and her equipment or $700,000. In addition, for the loss of the second barge, the DB-560 Barge, plaintiff should be awarded two times the value of that barge and her equipment or $1.3 million. All total, plaintiff should be awarded $2 million in punitive damages.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment)

16. Plaintiff reallages paragraphs 1-15.

17. Plaintiff seeks a judicial determination that there was no meeting of the minds between plaintiff and defendant regarding a written agreement and therefore no written towage agreement between the parties in this case.

18. Alternatively, in the event the Court determines that the written agreement initially tendered by defendant is in effect, plaintiff seeks a judicial determination that the multiple exculpatory clauses contained in the towage agreement initially presented by defendant are void in the face of losses caused by a tower's gross negligence, including waiver of

**Page 5 – COMPLAINT**

subrogation clauses. <u>Royal Insurance Company of American v. Southwest Marine</u>, 194 F.3d 1009, 1014-16 (9th Cir. 1999).

WHEREFORE, plaintiff prays for judgment against defendant as follows:

1. On its First Claim for Relief, for compensatory damages of $1.35 million and punitive damages of $2 million;

2. On its Second Claim for Relief, for a declaration that there was no written agreement between plaintiff and defendant or alternatively that the written agreement tendered by defendant is unenforceable in the face of gross negligence; and

3. For its costs and disbursements incurred herein.

DATED this 18th day of March, 2013.

          HAGLUND KELLEY JONES & WILDER, LLP

          By/s/ Michael E. Haglund
              Michael E. Haglund, OSB No. 772030
              Attorneys for Plaintiff

Plaintiff demands a trial by jury.

DATED this 18th day of March, 2013.

          HAGLUND KELLEY JONES & WILDER, LLP

          By/s/ Michael E. Haglund
              Michael E. Haglund, OSB No. 772030