**Michael G. Hanlon**, OSB No. 792550
mgh@hanlonlaw.com
**Law Offices of Michael G. Hanlon**
825 One Main Place
101 S.W. Main Street
Portland, OR  97204
Telephone: (503) 228-9787
Facsimile:  (503) 224-4200

**Robert A. Green**, WSB No. 12659
robert@rgreenlaw.com
**Law Offices of Robert A. Green, Inc., P.S.**
1900 West Nickerson Street
Fishermen's Center, Suite 203
Seattle, WA 98119
Telephone: (206) 285-9481
Facsimile:  (206) 284-4525
Admitted Pro Hac Vice
Attorneys for Defendant Oregon Offshore Towing, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GREGER PACIFIC MARINE, INC.,**<br>a California Corporation, | Case No.: 3:13-cv-00461-SI |
| Plaintiff,<br>v. | Defendant Oregon Offshore Towing, Inc.'s<br>MOTION FOR SUMMARY JUDGMENT<br>Pursuant to Fed. R. Civ. P. 56<br>Request for Oral Argument |
| **OREGON OFFSHORE TOWING, INC.,**<br>an Oregon Corporation, | |
| Defendant and Counterclaimant. | |

## I.    MOTION FOR SUMMARY JUDGMENT

Oregon Offshore's Motion for Summary Judgment - 1

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

Pursuant to Fed. R. Civ. P. 56, Defendant / Counterclaimant Oregon Offshore Towing, Inc. ("Oregon Offshore") hereby moves for summary judgment. In support of this motion, Defendant relies on the Declaration of Robert A. Green and the Affidavit of Jerry White filed herewith. Pursuant to LR 7-1(a) the undersigned hereby certifies that the parties made a good faith effort through personal and telephone conferences to resolve this dispute and have been unable to do so.

Defendant Oregon Offshore requests that judgment be entered in its favor on all or some of the claims as follows:

1. Judgment in favor of Oregon Offshore on its Counterclaim that Greger owes Oregon Offshore lump sum hire of $132,500 plus attorney fees and costs.

2. Judgment that Greger Pacific Marine, Inc. ("Greger") did not own the barge PACIFIC BUILDER (ex-Weeks 243) and as a result, plaintiff has no claim as a matter of law.

3. Judgment dismissing Oregon Offshore for the loss of the barge PACIFIC BUILDER.

4. Judgment dismissing Oregon Offshore for the loss of the barge DB-560.

## II. MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    INTRODUCTION

During August 2012, Plaintiff Greger Pacific Marine, Inc. ("Greger") the alleged owner of the barge PACIFIC BUILDER (ex-Weeks 243) and the barge DB-560, hired Oregon Offshore to tow its barges from Pearl Harbor, Hawaii to California. On September 4, 2012 Greger sent the barges to sea under the tow of Oregon Offshore's tugboat the OCEAN EAGLE. Greger had the non-delegable duty to tender the barges to Oregon Offshore in seaworthy condition. In order to ensure the seaworthiness of the barges at the commencement of the tow, Greger was obligated to

Oregon Offshore's Motion for Summary Judgment - 2

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

obtain a load line certificate or exemption letter from the Coast Guard.  Greger did not obtain a
load line certificate or exemption letter.  Furthermore, it did not comply with the repair
recommendations suggested by its surveyor, (Dana Teicheira), in his May 2012 Condition and
Valuation Surveys, it did not obtain insurance for either barge, it did not provide a copy of the
barge surveys to Oregon Offshore and it did not advise Oregon Offshore of any special
circumstances regarding the tow.  While under tow between Hawaii and California, the PACIFIC
BUILDER sank on September 5, 2012 and the DB-560 sank on September 13, 2012.  Greger
alleges that its barges sank due to the gross negligence of Oregon Offshore.  Oregon Offshore
has denied responsibility for the loss and has affirmatively plead that the barges sank because
they were not seaworthy.  Oregon Offshore has also counterclaimed for payment of charter hire.

## II.      EVIDENCE RELIED UPON

The evidence relied upon consists of the records and files herein, the Affidavit of Jerry
White and the Declaration of Robert A. Green.

## III.     FACTS

The Undisputed Material Facts Are As Follows:

1.  Oregon Offshore is a State of Oregon business which owns and operates tugboats and
tows barges for hire.  Jerry White is the President of Oregon Offshore and responsible for its
operations.

2.  Greger is a State of California business which owns various tugs, barges and other
equipment which it operates and / or leases.  Ron Greger is the President of Greger and
responsible for its operations.

3.  During August 2012 Oregon Offshore and Greger negotiated an Agreement

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

whereby Oregon Offshore would undertake to tow in tandem from Pearl Harbor, Hawaii to Vallejo, California two of Greger's barges, the "PACIFIC BUILDER" (ex-Weeks 243) and the DB-560. Green Decl., GDD 1-7, Standard Towage Agreement.

    a. The PACIFIC BUILDER was built in 1962. It was 175'x 68' and 1099 gross tons. At Ron Greger's request, the Barge was surveyed during May 2012. The stated purpose of the survey was for "<u>purchase and insurance.</u>" Green Decl.; GDD-8. The surveyor, Dana Teicheira, noted in his survey report that neither the report nor the surveyor "[e]xpresses any opinion relative to the stability of the vessel." Green Decl.; GDD-26. The surveyor recommended that the barge have bottom repairs and framing repairs to regain internal structural strength. Green Decl., GDD-25. Plaintiff did not own the PACIFIC BUILDER. A different entity, Greger Pacific Equipment, LLC owned the PACIFIC BUILDER which it purchased from Weeks Marine during July 2012 for $1.00 and "other valuable consideration".[1] Green Decl. at 3; GDD-91; Greger Dep. 33:12-21. The barge owner did not provide any repairs recommended by surveyor Teicheira (Green Decl. at 3; GDD-93; Greger Dep. 51:12-14, 52:1-3) and it never purchased insurance for the barge. Green Decl. at 3; GDD-92. Greger Dep. 43:7-8. The barge departed Hawaii with a spud tower lying lengthwise on its deck which Ron Greger believes was secured to the deck by a Greger employee. Green Decl. at 3; GDD-102; Greger Dep. at 100:12-20. Greger did not provide Oregon Offshore with a copy of the survey report prior to the voyage (Green Decl. at 3;

---

[1] The "other valuable consideration" was the buyer's agreement to remove the barge from Hawaii and to give Weeks Marine favorable consideration with respect to potential future business.

Oregon Offshore's Motion for Summary Judgment - 4

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

GDD-96; Greger Dep. 70:15-18) and it did not obtain a load line certificate as required. The Coast Guard Critical Profile of the PACIFIC BUILDER dated September 14, 2012 notes that the vessel's Load Line Certificate expired during 1988 and that its Certificate of Inspection was deactivated during 1993. Green Decl.; GDD-47.

b.  The DB-560 is a crane barge which was built in 1944. It was 120' x 60' and 604 gross tons. During May 2012, at Ron Greger's request, the barge was surveyed by Dana Teicheira. The stated purpose of the survey was for "insurance and potential sale." Green Decl.; GDD-28. The surveyor noted in his survey report that neither the report nor the surveyor "[e]xpresses any opinion relative to the stability of the vessel." Green Decl.; GDD-42. Plaintiff purchased the DB-560 in Hawaii during May 2011. Plaintiff testified that it paid $80,000 for the barge. Green Decl. at 3; GDD – 96; Greger Dep. 71: 13-19. Plaintiff never obtained insurance for the barge and never used the barge in any capacity. Green Decl. at 3; GDD – 94, 95; Greger Dep. 64: 21-24, 65:23-25, 67:1-9. Plaintiff did not provide Oregon Offshore with a copy of the survey prior to commencement of the voyage and it did not obtain a load line certificate or exemption letter.

4.  Oregon Offshore prepared its Standard Towage Agreement (the "Towage Agreement") which it emailed to Greger during August 2012. The charter hire was $132,500. On August 18, 2012, Greger emailed the signed Towage Agreement to Oregon Offshore. Green Decl. at 3; GDD-105; Greger Dep. 132: 1-23.

5.  Following its receipt of the signed Towage Agreement, Oregon Offshore proposed a

Oregon Offshore's Motion for Summary Judgment - 5

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

modification to the Towage Agreement whereby it would be entitled to additional charter hire if the price per gallon of diesel fuel was in excess of $3.15 / gallon. Greger did not sign or initial this proposed modification. White Aff. at 7.

6.    Prior to commencement of the tow, Greger was required by the Towage Agreement and /or federal regulations to tender the barges in seaworthy condition. The term "seaworthy" has been defined for centuries to mean a vessel which is fit for travel on the sea. To ensure overall seaworthiness of a vessel the Coast Guard requires that a barge obtain a load line certificate. See, U.S. Department of Homeland Security / U.S. Coast Guard Load Line Policy Notes, Section 1, Overview of Load Line Assignment. Greger failed to obtain a load line certificate (Green Decl. at 3; GDD – 101; Greger Dep. 91:9-16) or exemption letter for either barge. A load line certificate is obtained through the Coast Guard and involves a survey performed by the ABS ("American Bureau of Shipping") or other classification society. An exemption letter is obtained through the OCMI (Coast Guard Officer In Charge of Marine Inspection). In either event, the subject vessel is required to be inspected in order to insure that it is seaworthy enough to make the voyage (general condition of the hull, integrity of closures, satisfactory stability for the voyage, etc.). Greger acknowledges that a "load line is generally issued by a class society to verify a barge, or a tug, or a ship as suitable for working in the ocean … or crossing the ocean. Green Decl. at 3; GDD - 109; Greger Dep. 171:12-19. Greger was penalized by the U.S. Coast Guard for not obtaining a valid load line for the PACIFIC BUILDER and the Barge DB-560. Green Decl.; GDD – 114.

7.    Immediately prior to commencement of the tow of plaintiff's barges, Oregon Offshore

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

and its tug OCEAN EAGLE, with the same crew, successfully towed a barge from San Diego to Pearl Harbor.  Ron Greger was on the dock in Hawaii when the tug and barge arrived from San Diego.  The Towage Agreement prepared by Oregon Offshore and signed by the owner of the tow was the "Standard Towage Agreement" utilized by Oregon Offshore in the current case.  In this instance, to Mr. White's knowledge, the barge owner obtained insurance for its barge and it obtained a load line certificate or exemption letter.  White Aff. at 9.

8.    On September 4, 2012, at approximately 6:00 p.m., local Hawaii time, Oregon Offshore's tugboat OCEAN EAGLE departed Pearl Harbor with the barge PACIFIC BUILDER and the DB-560 in tandem tow.  The experienced crew consisted of a Captain, Mate, Engineer and two deck hands.  Greger provided the tow bridles, assisted the tow hookup and hired a separate tug to assist the tow away from the dock.  Greger was on the dock as the tandem tow left Pearl Harbor and he had aerial photos taken of the tug and tow as it departed.  Green Decl.; GDD – 52, 53, 102; Greger Dep. 99:2-6.  The tow left in calm weather and throughout its voyage it did not encounter any storm or unusual wind, wave or swell conditions.  Complaint at ¶ 8.

9.    The OCEAN EAGLE log book notes that on September 5, 2012 at approximately 2:40 p.m. local Hawaii time, the crew discovered that the barge PACIFIC BUILDER was sinking.  Green Decl.; GDD-63.  Captain Dennis Cooley came on deck and assessed the situation (Green Decl.; GDD – 78, 79; Cooley Statement.  Within 3 hours thereafter, the PACIFIC BUILDER capsized and sank.  Green Decl.; GDD - 63.  Captain Cooley telephoned Oregon Offshore President Jerry White during and / or after the sinking.  He also spoke with Greger about the sinking.  Captain Cooley recalls that he was instructed by Mr. White and Greger to keep towing the barge DB-560 to California.  Mr. White spoke with Mr. Greger during and after the sinking

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

and in response to his question to Greger about returning to Hawaii after the PACIFIC

BUILDER sank, Mr. White recalls Greger saying "Why would I want you to return to Hawaii?"

White Aff. at 11. Although Captain Cooley thought about returning to Hawaii, the DB-560 was

riding fine and in no sign of danger and in light of his conversation with Mr. Greger he continued

on with the tow. The tug reattached to the DB-560 and resumed its trip to the West Coast,

without incident for about 6 days. The PACIFIC BUILDER sinking was not reported to the

Coast Guard which resulted in a fine being assessed against Oregon Offshore and a warning to

Captain Cooley.

10. On September 11, 2012, about ½ way between Hawaii and California, the crew noticed

that the bow of the DB-560 was low in the water. As soon as sea conditions permitted, the tug

came alongside the DB-560 to investigate.[2] Two crew members boarded the barge DB-560 and

noticed water from below deck gushing through a hole on deck, where an electrical outlet had

been and through a crack on deck approximately 3" wide and 4-5' long and 30' from the bow. A

hatch cover was lifted and water was observed to be approximately 4-6' deep and flowing aft

from the bow through an open door between compartments. The crew members were unable to

pump out the water or effectively seal the holes / cracks in the deck and returned to the tug.

Green Decl.; GDD – 71, 78, 79. The DB-560 sank shortly thereafter.

11. The Coast Guard assessed a fine against Greger for failing to obtain a load line certificate

or exemption for the PACIFIC BUILDER and the DB-560. The Coast Guard also assessed fines

against Oregon Offshore for failing to report the loss of the PACIFIC BUILDER or the DB-560

and for failing to conduct alcohol and chemical tests after each barge sank. It also suspended

---

[2] The Tug OCEAN EAGLE tied up next to the DB-560. This operation is a risky undertaking. White Aff. at 11.

Oregon Offshore's Motion for Summary Judgment - 8

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

Mate Perry Hilleary's license for one month (Mr. Hilleary held a Coast Guard license endorsed for being a pilot of towing vessels of not more that 200 gross tons upon near coastal waters - within 200 miles of the coastline) and it issued a warning to Captain Dennis Cooley for not immediately reporting the sinkings.

## IV.    AUTHORITIES / DISCUSSION

### 1.  The Summary Judgment Standard.

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim ... on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

See also *Celotex v. Catrett*, 477 U.S. 317 (1986). A determination as to whether a fact is material is governed by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is incumbent upon the movant seeking summary judgment to set forth the basis for its motion and identify those pleadings, declarations and other materials showing that there is no genuine dispute of any material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to affirmatively put forward evidence demonstrating that there is a genuine dispute of material fact. Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that parties' case on which that party will bear the burden of proof at trial." *id* at 322. Summary judgment should not be denied unless the evidence is such that a reasonable jury "might return a verdict" in the non-movant's favor. *Anderson,* 477 U.S. at 257.

### 2.  There Are No Material Questions of Fact with Respect to the Following:

Oregon Offshore's Motion for Summary Judgment - 9

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

a.  GREGER FAILED TO PAY OREGON OFFSHORE THE AGREED LUMP
SUM TOWAGE HIRE OF $132,500.

The Towage Agreement is clear and unambiguous, "[l]ump sum hire as identified
above shall be fully and irrevocably earned by owner upon commencement of
services hereunder, the tug, tow, and / or cargoes lost or not lost…"  Green Decl.;
GDD -2; Standard Towage Agreement.  The voyage started and Greger did not
and has not paid any portion of the $132,500 lump sum hire which it agreed to
pay.  The Complaint alleges that the Towage Agreement is void because there
was no meeting of the minds (Complaint at ¶17) or that it is unenforceable
because of gross negligence or the presence of exculpatory clauses.  The fact that
Greger did not agree to the proposed modifications in price does not negate the
Towage Agreement.  There is no evidence that gross negligence caused either
barge to be lost, and the alleged exculpatory clauses do not relieve Oregon
Offshore of any liability.

Greger's theory of liability disregards the fact that its barges were not fit
for the voyage and instead, it attempts to justify its position based on *Bisso v.
Inland Waterways Corp.,* 394 U.S. 85, 1955 AMC 899 (1955), which holds that a
clause in a towage contract is invalid which purports to release towers from all
liability for its negligence.  In *Bisso*, the barge of the same name collided with a
bridge and sank while being towed up the Mississippi River by defendant's tug.
The collision was caused by the tug's negligent towing.  The 5th circuit affirmed
the district court's decision and held that the tower was relieved of damages

Oregon Offshore's Motion for Summary Judgment - 10

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

because of certain clauses in the Towage Contract.  One clause provided that the towing movement should be at the "sole risk" of the barge.  The Supreme Court reversed the decision and held that clauses in towers' contracts were invalid to the extent they released the tower from all liability for its negligence.  The two main reasons for the rule were (i) to discourage negligence by making wrongdoers pay damages and (ii) to protect overreaching by those who have power to drive hard bargains.

The instant case is outside the scope of *Bisso* because the Towage Agreement does not exculpate Oregon Offshore from all liability, rather, it allocates the risk of loss to the tow and towers' respective insurers.

The Towage Agreement provides that if one party fails to obtain insurance or is in violation of its policy it is deemed to be an insurer or self-insurer and shall accept or pay claims which would have otherwise been submitted to the failed insurance. Green Decl.; GDD - 5; Standard Towage Agreement.  "Required Insurances," § D(4).  Further, courts have successfully challenged the application of *Bisso* in situations which require the barge owner to name the tower as an additional insured with a waiver of subrogation.  See *Dow Chemical Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1987 AMC 2170 (5th Cir. 1987).  The rational in *Dow Chemical* which sets it apart from *Bisso* is that naming and waiving does not completely absolve the tower because it may still be exposed to a deductible (Oregon Offshore's deductible is $35,000) and losses that are not due to covered perils, such as gross negligence as alleged by Greger.  *Dow Chemical* makes it

Oregon Offshore's Motion for Summary Judgment - 11

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

clear that a barge owner who agreed to secure insurance naming the tower and waiving subrogation but who elected to self-insure because it did not or could not obtain insurance cannot recover damages from the tower for a loss which would have been covered by the required insurance. In the current case, the parties struck a bargain by which they intended any loss would be covered by insurance. Greger should not be permitted to escape paying for lump sum hire which it agreed to pay because it saved money by not obtaining insurance which may have compensated it for its loss.

The second prong of the *Bisso* case is that the subject contract was void because it resulted from a disparity in bargaining strength. There was no economic coercion in the Oregon Offshore / Greger Towing Agreement because not only were both parties knowledgeable in the towing business and had similar contracts, but Greger's failure to agree to the proposed modification made by Oregon Offshore, does not cancel the underlying contract, but confirms that each party had bargaining power.

Interestingly, the Towage Agreement has many provisions which are similar to Greger's on-line Towage Agreement. Green Decl.; GDD – 54-61.[3] A summary of the relevant provisions are compared in the table below:

---

[3] At his deposition, during October 2013, Ron Greger was presented with a copy of Greger Pacific Marine, Inc.'s Towage Agreement, Terms and Conditions which was printed as recently as February 26, 2014 from Greger's web site. Greger claims that he was unaware of the on-line Towage Agreement and that several years ago he had a new agreement prepared. Curiously, Greger cannot recall when he may have used his "new agreement" but it was not used in a while and Mr. Greger could not recall with whom he used his new agreement. Green Decl. at 3; GDD-112; Greger Dep. 215: 24-25, 216: 1-23.

Oregon Offshore's Motion for Summary Judgment - 12

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

| Oregon Offshore Standard Towage Agreement | Greger's On-Line Towage Agreement |
|---|---|
| "[l]ump sum hire as identified above shall be fully and irrevocably earned by owner upon commencement of services hereunder, the tug, tow, and / or cargoes lost or not lost…" Towage Agreement at ¶ 1.A. | "Towage money shall be deemed to have been fully earned when the tug commences the voyage … tow and / or its cargo lost or not lost." Greger Towage Agreement at ¶2. |
| "Customer warrants that it shall use due diligence to tender the tow at the starting port / place … in a seaworthy condition, documented and with all licenses and permits routinely required to the tow… the tow shall be properly trimmed … it has informed owner of any special circumstances or conditions applicable to the tow … which may affect owner's performance of services under this agreement." Towage Agreement ¶ 3.B. | Owner warrants that the tow shall be seaworthy and in all respects ready for and capable of making the specified voyage … owner agrees to indemnify and hold tower harmless against any loss, damage or liability arising out of or contributed in any way by non-seaworthiness of the tow …." Greger Towage Agreement at ¶5.a. |
| "Customer shall procure and maintain the following policies of insurance with respect to the tow …." Towage Agreement ¶ 8.D.2 | "The owner of the tow shall obtain at its expense and keep in full force and effect … hull and machinery insurance … on the tow to the full insurable values thereof, naming tower and the tug as an additional assureds and having all rights of subrogation or action waived by all underwriters against tower …" Greger Towage Agreement at ¶ 11.a. |
| "The substantially prevailing party in any such litigation shall be entitled to recover its reasonable legal fees and costs.  Towage Agreement at ¶ 15 | "Owner agrees to pay tower's reasonable attorney's fees and costs incurred to collect sums due from owner …." Greger Towage Agreement at ¶18. |

Greger acknowledges that it has not paid charter hire but it disagrees that

any is owed because it rejects any responsibility for the loss.  The facts do not

support this defense.  Foremost is Greger's acknowledgment that "a load line is

issued by a class society to verify a barge as suitable for working in the ocean" or

crossing the ocean. (Green Decl. at 3; GDD-109; Greger Dep. 171:12-19) and

Oregon Offshore's Motion for Summary Judgment - 13

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

Greger's admission that it did not obtain a load line certificate.  Q: "is there any reason why you didn't (request the Coast Guard to issue a load line)? A: "No, I pretty much blew it. I should have, but I blew it."  Green Decl. at 3; GDD – 101; Greger Dep. 91:9-16.  Not only did Greger fail to obtain a load line certificate, but it did not even follow the recommendations of its surveyor Dana Teicheira with respect to the repair of the PACIFIC BUILDER or its suitability to be towed. Likewise, the DB-560 did not have a suitability for tow survey and two crew members who went onboard the DB-560 prior to its sinking, found that there was a hole and crack on deck and that the hold was flooded.  Green Decl.; GDD 71, 78, 79.  Although the May 2012 survey by Mr. Teicheira states that "The most effective  deck repair would be to seal the holes watertight, and then apply a 4" to 6" thick asphalt or concrete wear deck forward" Green Decl.; GDD-30), the evidence is clear that Greger allegedly sealed some holes, but did not provide any asphalt, concrete or other deck cover.  Geen Decl. at 3; GDD-97; Greger Dep. 74: 3-20.

The fact is that Greger failed to ensure the seaworthiness of the barges and its anticipated reliance on *Dillingham Tug & Barge Corp. v. Collier Carbon and Chemical Corp.*, 707 F.2d 1085 (9th Cir. 1983) to excuse payment of charter hire is not valid.  In *Dillingham*, the breach of implied warranty was based on the tug towing the barge in excess of recommended speed; failing to pump water out of the barge when it had the opportunity to do so; and failing to head towards a closer, safer port when it became obvious that the barge was in trouble.  The

Oregon Offshore's Motion for Summary Judgment - 14

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

current case is distinguishable from Dillingham in several respects.  First, there is no reported evidence in *Dillingham* that the barge owner failed to obtain a load line.  Second, the barge in Dillingham had a specific towage survey with recommended speeds.  Third, Greger did not share with Oregon Offshore its barge surveys, it did not recommend the speed of the tow, and it did not point out any particular circumstances which might affect the towability of the barges.  Fourth, Greger did not offer any evidence to Oregon Offshore that the barges were seaworthy.  See, *Howard v. Gildersteen No. 325*, 1934 A.M.C. 338 (E.D.N.Y.); *Kaine v. Sorenson*, Q.R.ISC 184 (Can. 1892) (older case illustrates failure of duty to disclose may entitle the tug owner to greater remuneration).  Fifth, after the PACIFIC BUILDER sank, the DB-560 was not in obvious trouble and was towed without incident for 6 days.  Green Decl.; GDD - 62-71, 78, 79.  Finally, the PACIFIC BUILDER sank before the tug had an opportunity to attempt to pump out water and when the barge DB-560 appeared to be taking on water, the barge was boarded at the crews' first opportunity and the attempts to pump out the barge and seal the holes on deck were futile.  The uncontroverted fact is that Greger failed in its non-delegable duty to ensure that its barges were seaworthy at the commencement of the voyage. *Nat G. Harmon Overseas Corp. v. American Tug Titan*, 516 F.2d 89, 1979 AMC 2257 (5th Cir. 1975); Cargill Inc. v. C & P Towing Co., Inc. 1991 AMC 101 (E.D. Va. 1990) (The owner of the tow has an affirmative duty to advise the tower of any conditions which may affect the safety of tow movement).

Oregon Offshore's Motion for Summary Judgment - 15

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

Greger should not be permitted to avoid paying charter hire because its barges were allegedly lost due to the fault of Oregon Offshore.  Please see, *EAI International, Inc. et al. v. Alaska – Oregon Offshore Marine, Inc.* - CV-03-1296-HU-USDC-District of Oregon – Findings and Recommendations – February 2, 2004 (Green Decl.; GDD 80-87), where the court reviewed Oregon Offshore's Standard Towage Agreement and found, that with respect to claims for damage to tows brought by EAI (the charterer of two dump scows) against Oregon Offshore (the tower of said scows), "The Towage Agreement is unambiguous and clearly provides that a failure of EAI's insurance to cover the loss … EAI is obligated to pay any claims for damage to the dump scows which would otherwise have been submitted to EAI's insurer." Green Decl.; GDD - 86.  Magistrate Hubel also recommended that Oregon Offshore be given leave to submit a motion for attorney's fees and costs.

There are no questions of material fact with respect to this issue.  Greger did not pay the lump sum hire of $132,500; it did not ensure that its barges were in seaworthy condition; and it did not obtain insurance.  Aside from the above, it was the intent of the parties that insurance would cover all loses and Oregon Offshore relied on Greger's agreement to its detriment that lump sum hire would be paid.  Greger is estopped from not paying Oregon Offshore's lump sum hire fee.

b.  THE PACIFIC BUILDER WAS OWNED BY GREGER PACIFIC EQUIPMENT, LLC NOT PLAINTIFF, GREGER PACIFIC MARINE, INC.

Oregon Offshore's Motion for Summary Judgment - 16

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

The Bill of Sale states that the PACIFIC BUILDER was sold to Greger Pacific Equipment, LLC.  Green Decl.; GDD 44-46; Bill of Sale.  The Abstract of Title dated August 28, 2013 confirms that the PACIFIC BUILDER was owned by Greger Pacific Equipment, LLC when it was lost during September 2012.  Green Decl.; GDD 49-51; Abstract of Title.

The allegation in the Complaint at ¶ 1which asserts that plaintiff (Greger Pacific Marine, Inc.) owned the PACIFIC BUILDER is wrong and Plaintiff is entitled to judgment as a matter of law.

c.   GREGER FAILED TO TENDER DELIVERY OF THE BARGES PACIFIC BUILDER AND DB-560 IN SEAWORTHY CONDITION.

Unfortunately the PACIFIC BUILDER and the DB-560 are not the only barges which have been lost while under tow.  Fortunately, from a legal perspective, the courts have found an island of reason in a sea of uncertainty.   The legal precedents in this area are clear.  The tug is not the insurer or bailee of the vessel in its tow.  *Stevens v. White City*, 285 U.S. 195, 525 S. Ct. 346, 76 L. Ed. 699 (1932); The owner of the tow has an absolute duty to furnish a seaworthy vessel. *McLain Line v. Reading Co.*, 1944 AMC 157, 53 F. Supp. 736 (E.D.N.Y); and a barge which capsizes under apparently normal conditions is presumed to be unseaworthy.  *South v. Moran T. + T.*, 1966 AMC 1987, 360 F.2d 1002 (2nd Cir.) (owner of tow impliedly warrants seaworthiness of tow); *Mechling Barge Lines v. Derby Co.*, 1968 AMC 1436, 399 F. 2d. 304 (5th Cir.); *Massman v. S.C. + N.O.* 1980 AMC 1164, 462 F. Supp.1362 (W. D. Mo. 1979).  This presumption may

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

only be rebutted by proving specific acts of improper handling or unusual conditions. *Shebby Dr. v. Smith Bros*, 469 F. Supp. 1279, 1982 AMC 1516 (D. Md. 1979).

Greger acknowledges that the typical trade winds between Hawaii and the West Coast are "Rough sea, trade winds" (Green Decl.; GDD – 90; Greger Dep. 17:1-6, and that the tow did not encounter any unusual wind, wave or swell conditions during this voyage. Complaint at ¶8.

The efficient or proximate cause for the sinking of the PACIFIC BUILDER and DB-560 was not the statutory violations or other "grossly negligent" acts asserted by Greger, but rather because the barges were not tendered in seaworthy condition.

Greger knew the significance of obtaining a load line (Green Decl.; GDD – 109; Greger Dep. 171: 12-19. A plaintiff does not carry its burden of proof where the evidence demonstrates two or more equally possible causes for the loss, at least one of which is not the responsibility of defendant. *Union Carbide v. IRENE CHOTIN*, 1974 AMC 2231 (Ed. La. 1974). In this instance, while Greger has plead that the loss was caused by Oregon Offshore's gross negligence, none of these allegations negate the undisputed material fact that plaintiff failed to obtain a load line certificate or exemption or to otherwise ensure that the barges were seaworthy at the commencement of the voyage. Also, these statutory violations by defendant do not affect the allocation of the burden by plaintiff, to prove that any of these instances caused the sinkings. *Tisbury Towing and*

Oregon Offshore's Motion for Summary Judgment - 18

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

*Transportation Co., Inc., v. _____,* 2001 US App. Lexis 11725 (1ˢᵗ Cir. 2001). (Failure to report an accident as required by the Coast Guard regulations has been found to not affect the allocation of proof); *Joseph v. Tidewater Marine, LLC,* 2002 U.S. Dist. Lexis 15711 (Ed. La. 2002).

Plaintiff and defendant disagree as to the cause of the sinkings. Plaintiff's assertions are speculative or hypothetical. Defendant's theory is consistent with the evidence.

Neither Greger nor Mr. Teicheira shared the barge surveys with Oregon Offshore prior to commencement of the tow and no one was advised of any particular towing speeds or circumstances which might affect the tow. Further, it is uncontroverted that plaintiff provided none of the repairs recommended by Surveyor Teicheira or any repairs to either barge other than closing a faulty hatch cover on the DB-560 with a piece of plywood and silicone. Green Decl. at 3; GDD -96; Greger Dep. 72: 18-23.[4] The barge PACIFIC BUILDER and the barge DB-560 both sank in normal trade wind conditions ("the tow … did not encounter any storm or unusual wind, wave or swell conditions") (Complaint at ¶8) and plaintiff has not provided a scintilla of evidence that either barge was seaworthy when tendered to Oregon Offshore or that either loss was due to any grossly negligent act alleged by Greger.

V.    CONCLUSION

The fact that Greger failed to ensure the seaworthiness of the barges at the inception of the voyage is so overpowering, uncontroverted and irrepressible that its predicable results could not be affected by any other acts or events. There is no evidence that the barges were fit for their

---

[4] The document requests propounded by defendant requested all documents with respect to repairs to either barge between January 1, 2012 and September 5, 2012. No documents were provided.

Oregon Offshore's Motion for Summary Judgment - 19

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax

intended voyage.  Greger should not be rewarded for failing to pay barge repair costs, charter hire fees, load line fees, insurance premiums and deductibles, regardless of whether its arrangement with Oregon Offshore is governed by the Towage Agreement, a hand shake, or the Code of the West.  Greger must pay lump sum hire of $132,500 plus attorney fees and costs and its claim against Oregon Offshore for the loss of its barges should be dismissed.

        Respectfully submitted this 12th day of March 2014

                        LAW OFFICES OF ROBERT A. GREEN, INC., P.S.
                        s/Robert A. Green
                        ROBERT A. GREEN, WSBA #12659
                        Attorney for Defendant
                        Admitted Pro Hac Vice

Oregon Offshore's Motion for Summary Judgment - 20

Law Offices of
ROBERT A. GREEN, INC., P.S.
1900 West Nickerson Street
Fisherman's Center, Suite 203
Seattle, Washington 98102
(206) 285-9481 Phone
(206) 284-4525 Fax