# STANDARD TOWAGE AGREEMENT
## (Lump Sum Form)

| OWNER | | CUSTOMER | |
|---|---|---|---|
| NAME: | Oregon Offshore Towing, Inc. | NAME: | Greger Pacific |
| ADDRESS: | 1270 Winsor Avenue | ADDRESS: | 4225 Solano Aveue - Ste 582 |
| CITY, STATE: | North Bend, OR 97459 | CITY, STATE: | Napa, CA 94558 |
| CONTACT: | Jerry White | CONTACT: | Ron Greger |
| TELEPHONE: | 541-404-2899 | TELEPHONE: | 707-320-3434 |
| FACSIMILE: | 541-267-5020 | FACSIMILE: | 707-226-2063 |
| E-MAIL: | jwtug@aol.com | E-MAIL: | ronald.greger@gmail.com |

| TUG | | TOW | |
|---|---|---|---|
| NAME: | Ocean Eagle | NAME: | DB 560 / Weeks 243 (Ex) PACIFIC BUILDER |
| O.N.: | 1107892 | O.N.: | 1233370       682220 |
| DIMENSIONS: | 30' x 109' | DIMENSIONS: | 60' x 120' / 68' x 175' |
| HORSEPOWER: | 2000 | TYPE/USE: | Derrick Barge / Deck |

| HIRE AND CHARGES | | STARTING | |
|---|---|---|---|
| HIRE: | $132,250.00 | PORT/PLACE: | Pearl Harbor, HI |
| | | DATE/TIME: | Approx. September 1, 2012 |
| STANDBY: | N/A | DESTINATION | |
| CARGO: | N/A | PORT/PLACE: | Vallejo, CA |
| OTHER: | | EST.DATE: | September 17, 1012 |

### DESCRIPTION OF SERVICES

Move (2) two barges from Pearl Harbor, HI to San Francisco, CA for lump sum payment.

Owner agrees to provide and Customer agrees to hire the Tug identified above for the purpose of towing the Tow identified above from the starting port/place to the destination port/place within the time frame estimated; the term "Tug" shall include the Tug identified as well as any vessel substituted for the Tug and the term "Tow" shall include the Tow identified as well as any vessel substituted for the Tow, all cargo transported or to be transported aboard the Tow and all vessels towed in tandem with the Tow.

Standard Towage Agreement                                                                                                                                       1

OOT 00002

GDD0001

1. HIRE, CHARGES AND PAYMENT

    A. <u>Hire</u>. Lump sum hire as identified above shall be fully and irrevocably earned by Owner upon commencement of services hereunder, the Tug, Tow and/or cargoes lost or not lost or voyage delayed, frustrated or cancelled.

    B. <u>Fuel and Lubricants</u>. Fuel and lubricants consumed by the Tug shall be:
        __X__ deemed included within the agreed lump sum hire; or
        _____ separately paid/reimbursed by Customer at Owner's actual cost thereof.

    C. <u>Standby</u>. Customer shall pay the standby rate identified above at all times the Tug's engines are not running and for any other delay caused primarily by Customer, the Tow and/or the cargo. Accrual of standby shall cease once the Tug has connected to the Tow and towage has commenced. If no standby rate is identified above, there shall be no standby rate applicable to this agreement.

    D. <u>Cargo Handling</u>. If Tug crewmembers are required by special circumstances and/or are requested by Customer to lad, stow, reload, restow or discharge cargo, then Customer shall pay Owner the cargo handling rate identified above for each hour or fraction thereof during which each crewmember performs such services.

    E. <u>Charges and Taxes</u>. Customer shall pay or reimburse Owner for all charges directly applicable to the Tow and/or cargoes thereon, including, without limitation, all port charges, dockage, wharfage, pilotage, entry and customs fees, assist towage, canal tolls, lock fees, agency fees, taxes, duties and similar charges routinely incident to the services contemplated. To the extent Owner arranges or advances payment for the foregoing services, it does so only as agent for Customer. Any charges applicable to the Tug only and not applicable to the Tow or its cargo shall be for the account of Owner.

    F. <u>Payment</u>. Payments shall be made by Customer in US currency without deduction or setoff to Owner at its address identified above, as follows:

    Lump sum hire as identified above shall be paid to Owner:
        _____ prior to mobilization of the Tug from its usual berth to the starting port/place;
        _50%_ prior to departure of the Tug and Tow from the starting port/place to the destination;
        _50%_ upon completion of services and return of the Tug to its usual berth; or
        _____ other: payments may vary, to be mutually agreed upon _____

    All other amounts due Owner shall be:
        __X__ Invoiced upon completion of services, with payment due __30__ days thereafter;
        _____ Invoiced every _____ days, with payment due _____ days thereafter; or
        _____ other: _____

    Amounts due Owner which have not been paid shall accrue interest at the rate of one percent (1%) per month from date due until paid in full.

2. TANDEM TOWAGE

    __X__ Owner shall not join Tow with another in tandem.
    _____ Owner may join the Tow with another with Customer's prior verbal consent.
    _____ Owner shall join the Tow with another for all or part of the service.

Standard Towage Agreement                                                                 2

3. WARRANTIES AND PERFORMANCE

   A. Owner. Owner warrants that it shall use due diligence to tender the Tug at the starting port/place and at the date and time identified in a seaworthy condition, properly equipped, documented and with all licenses and permits routinely required for the services contemplated; it shall use reasonable efforts to prosecute the contemplated services with due dispatch but does not warrant or guarantee any particular speeds or arrival/departure times; the Tug shall be capable of towing the Tow and cargo at such speeds as would be considered normal for comparable services; and, it has informed Customer of any special circumstances or conditions applicable to the Tug which may affect Owner's performance of services under this agreement.

   B. Customer. Customer warrants that it shall use due diligence to tender the Tow at the starting port/place and at the date and time identified in a seaworthy condition, documented and with all licenses and permits routinely required of the Tow or the cargo; the Tow shall be equipped with navigational lights, towing bitts, chain bridle, towing shape, navigation equipment and emergency wire or other retrieval system; the Tow shall be properly trimmed and with all cargo loaded, stowed and secured sufficiently to safely complete the anticipated voyage; the Tow shall be capable of being towed at such speeds as would be considered normal for comparable services; all cargo transported or to be transported aboard the Tow shall be lawful; each port/place and berth to/from which the Tug is expected to tow the Tow shall be safe for both the Tug and Tow all times and stages of tide; and, it has informed Owner of any special circumstances or conditions applicable to the Tow or the cargo which may affect Owner's performance of services under this agreement.

   C. Both. Neither party shall be required to inspect the Vessel(s) or property of the other, and no such inspection(s), including comments or recommendations made with respect thereto, shall create liabilities or responsibilities for the other party. Other than the foregoing, neither party makes nor shall either be held to any warranty of any type or nature whatsoever, whether express or implied, including, without limitation, any warranty of seaworthiness or workmanlike service.

4. LIBERTIES

Owner shall be at liberty to: go to the assistance of other vessel(s) in distress in attempt to save life or property at sea; call at any port/place for fuel, repairs, supplies or other necessities if reasonable required for safe completion of voyage; and/or, load, discharge, engage or disengage person, property or cargo if necessitated by emergency circumstance or otherwise reasonably required for safe completion of services. In the event of assistance for purposes of saving life or property at sea, Owner and the Tug's master shall make reasonable efforts to leave the Tow in a safe position. Customer shall have no right to share in any salvage award.

5. SUBSTITUTION AND CHANGES IN SERVICES

Owner shall have the right to substitute a reasonably comparable vessel for the Tug and Customer shall have the right to substitute a reasonable comparable vessel for the Tow. No such substitution, however, shall diminish a party's responsibility to the other without the prior written consent of that other party. Customer shall not have the right to change the destination port/place or add additional ports/places or call for loading or discharging cargoes or for any other purpose without Owner's prior written consent.

OOT 00004

GDD0003

6.  CARGO HANDLING BY TUG CREWMEMBERS

To the extent available and upon Owner's consent, Customer may utilize Tug crewmembers to assist with cargo handling and related tasks. While so employed, such crewmembers shall be completely under Customer's supervision, direction and control and shall be deemed borrowed servants of Customer, with Customer responsible for all loss, damage and/or liability involving cargoes and all third party loss, damage and/or liability caused in any way by crewmembers while so performing. Owner shall be responsible for payroll, withholding, employee benefit and similar direct employment related obligations for such crewmembers. The bodily injury, illness and/or death of such crewmembers while assisting with cargo handling and related tasks shall be as addressed in section 8, below.

7.  SPECIAL CIRCUMSTANCES

    A.  Disability/Breakdown of the Tug. Should the Tug become disabled, breakdown or otherwise become unable to fully perform the services contemplated and should such disability, breakdown, etc. either prevent further performance or continue for more than _____ ( 48 ) Consecutive hours, Customer shall have the following options:

        (1).  Customer may cancel this agreement and engage another operator to perform the services contemplated; or

        (2).  Customer may require Owner to complete performance under this agreement, whether by substitute Tug or other wise.

    B.  Disability/Breakdown of the Tow. Should the Tow become disabled, breakaway or be otherwise unfit to continue the voyage, the Tug master shall render assistance as he/she deems reasonable under the circumstances including, without limitation, the right to deviate to effect repairs obtain supplies, restow cargo, etc. Should the Tug be unable to retrieve the Tow and/or place it in such a condition that the voyage can safely continue, Customer shall be notified and the Tug shall either take the Tow to the nearest safe port/place or stand by the Tow until other assistance is rendered.

    C.  Loss of the Tow. Should the Tow become totally lost, the Tug shall be released from performance hereunder.

8.  INSURANCE, LIABILITY AND INDEMNITY

    A.  Intent. It is the intent of the parties that the insurances identified in this section cover all losses, damages, claims, liabilities and suits incident to the services contemplated, and that the parties shall look solely to such insurances, in sequence of first party insurance before third party insurance, rather than maintain claims against each other based upon negligence or fault. To that end, the parties agree to procure and maintain the following insurances, to promptly submit and prosecute all claims against such insurances and to look solely to such insurances for recovery. The lump sum hire charged by Owner is based in part upon the allocation of liability and insuring requirements set forth in the section.

OOT 00005

GDD0004

D.     Required Insurances.

    (1). Owner. Owner shall procure and maintain the following policies of insurances with respect to the Tug:

        (a). hull and machinery insurance pursuant to Pacific Coast Tug/Barge Form (1979), or equivalent, to the full actual market value of the Tug;

        (b). protection & indemnity insurance pursuant to Form SP-23 (Revised 1/56), or equivalent, with minimum limits of $5,000,000 per occurrence; and

        (c). pollution and environmental liability insurance, including coverage for damages, cleanup and restoration costs, in amounts no less than those limits required by applicable state and federal laws.

    (2). Customer. Customer shall procure and maintain the following policies of insurance with respect to the Tow and/or cargo:

        (a). hull and machinery insurance pursuant to Pacific Coast Tug/Barge Form (1979), or equivalent, to the full actual market value of the Tow;

        (b). protection & indemnity insurance pursuant to Form SP-23 (Revised 1/56), or equivalent, including crew coverage, with minimum limits of $5,000,000 per occurrence;

        (c). all risk cargo insurance upon all property/cargo carried aboard the Tow, in amount(s) equal to the full actual value(s) thereof and with the valuation clause for such policy to include cost, freight and insurance; and

        (d). pollution and environmental liability insurance, including coverage for damages, cleanup and restoration costs, in amounts no less than those limits required by applicable state and federal laws.

    (3). Conditions. The party required to procure and maintain an insurance shall be solely responsible for the payment of premiums and deductibles applicable to that Insurance. Each policy shall name as Insured's and waive subrogation against both Customer and Owner, their respective affiliates and subsidiaries, the Tug The Tow, any substitute Vessel used to perform hereunder and the owner(s) and charterer(s) of any such substitute Vessel. Prior to the commencement of services, each party shall provide the other with certificates of insurance confirming the insurance requirements set forth in this section. No act shall constitute a waiver of the foregoing, which may be waived only through a writing signed by both parties.

    (4). Failure of Insurance. In the event a party fails to procure and/or maintain an insurance as required above, an insurance fails for any reason (including, without limitation, breach of policy condition or warranty), and/or an insurer otherwise refuses or is unable to pay, the party required to procure that insurance shall be deemed an insurer or self-insurer, shall accept and pay claims which would have otherwise been submitted to the failed insurance and shall indemnify and hold harmless (including legal fees and costs) the other party of and from any loss, damage, expense, claim, liability and/or suit resulting from such failure.

OOT 00006

GDD0005

C. <u>Further Allocation.</u> Subject to the foregoing requirements as to insurance, which shall at all times be deemed primary, and only in the event a loss, damage, expense, claim, liability and/or suit does not fall within the scope of a required insurance, Owner and Customer shall be separately responsible for, and shall indemnify and hold harmless each other from and against (including legal fees and costs), the bodily illness, injury and/or death claims of their employees and the employees of their subcontractors as well as all loss, damage, expenses, claims, liabilities and suits arising out of or relating to property owned by it, with Owner specifically responsible for the Tug and all personal property on the Tug and with Customer specifically responsible for the Tow, the cargo and all personal property on the Tow. In furtherance of the foregoing, each party waives any immunity from suit and/or exclusivity of remedy afforded by any workers' compensation or similar law.

D. <u>Residual Liability and Indemnity.</u> In the event the insurances identified above do not cover a given loss, damage, expense, claim, liability and/or suit (other than by virtue of a failure of insurance as addressed in subsection B(4)., above) and except for the specific liabilities addressed in subsection C, immediately above, the parties allocate all other liability and indemnity based upon their respective degree of legal fault.

9. FORCE MAJEURE

Neither party shall be responsible for delay or failure to perform if the reason for such arises from: act of God; act, neglect or default of master, mariner, pilot, crew or servant in the navigation or management of a Vessel or equipment; fire, unless caused by the actual fault or privity of a party; perils, dangers and accidents or the sea or other navigable waters; act of war; act of public enemies; arrest or restraint or princes, rulers or people; seizure under legal process; quarantine restrictions; act or omission of the other party, its agents or representatives; strikes, lockouts, stoppage or restraint of labor from whatever cause and whether partial or general; riots and/or other civil commotion; breakdown or latent defects involving hull, machinery, equipment, lines, etc. not discoverable by due diligence; and/or, any other cause arising without the actual fault and privity of as party and over which that party does not have direct control.

10. LIMITATION OF LIABILITY

This agreement shall not be deemed a personal contract, nor shall it other wise deprive either party (or the owner or charterer of any substituted Vessel) of any benefit allowing ship owners to limit their liability by statute, regulation or other law.

11. CONSEQUENTIAL DAMAGES

Neither Customer, Owner, Tug, Tow nor any person, entity or vessel shall be responsible or liable for any indirect, consequential or special damages, including, without limitation, any claim for extra expense, loss of earnings, loss of profits, loss of use and business interruption, whether the same results from negligence, breach of this agreement or otherwise, and even if the possibility of such may have been foreseeable.

12. EXTENSION OF BENEFITS

All exceptions, exemptions, defenses, immunities, limitations of liability, privileges and conditions provided by this agreement or any applicable statute, regulation or law for the benefit of a party shall be automatically extended to and for the benefit of the Vessel (whether the Tug, Tow or a substitute) automatically extended to and for the benefit of the Vessel (whether the Tug, Tow or a substitute) provided by that party (including the owners, demise charterers, operators, master, officers and crew of each such Vessel) and to all business entities parent of, subsidiary to, affiliated with or under the management of that party, including their respective members, managers, directors, officers, employees and agents.

OOT 00007

GDD0006

### 13. GENERAL AVERAGE PRECLUSION

Notwithstanding Rule B of the York-Antwerp Rules 1994, the Tug and Tow, and Owner and Customer, shall be deemed separate interest not engaged in a common adventure.

### 14. SUBCONTRACTING AND ASSIGNMENT

Neither party shall have the right to subcontract performance or assign its interest in this agreement without the prior written consent of the other party.

### 15. LAW AND JURISDICTION

This agreement and performance under this agreement shall be governed by the general maritime law of the United States or by the laws of the state of Oregon in the event there is no applicable general maritime rule of law. The parties submit to the exclusive personal and subject matter jurisdiction of the United States District Court located in Portland, Oregon with respect to any litigation arising out of this agreement or out of performance hereunder and consent to the appropriateness of such venue; the substantially prevailing party in any such litigation shall be entitled to recover its reasonable legal fees and costs.

### 16. COUNTERPARTS AND FACSIMILE EXECUTION

This agreement may be executed in counterparts, each of which shall be considered original and all of which together shall constitute a single agreement. A facsimile signature to this agreement shall be considered equivalent to an original signature.

### 17. INTEGRATION, HEADINGS AND NEUTRAL CONSTRUCTION

This standard Towage Agreement expresses the entire agreement between the parties with respect to the services contemplated and supersedes and negates any prior or contemporaneous agreements, whether written or oral; there are no agreements, understandings, representations, arrangements or undertakings with respect to the services contemplated which are not fully expressed herein. This agreement shall not be modified or amended except through a writing signed by both parties. This agreement shall be construed neutrally, and as the commemoration of the mutual assent of both parties, rather than for or against either party. The headings used in this document are for convenience of reference only, and shall not be construed so as to give any substantive meaning to this agreement.

Dated this 18th day of August, 2012.

| OWNER: | CUSTOMER: |
|---|---|
| Oregon Offshore Towing, Inc. | Greger Pacific |
| _(signature)_ | _(signature)_ |
| Authorized Signature | Authorized Signature |
| Jerry White, Owner | Ron Greger, Owner |
| Printed Name and Title | Printed Name and Title |

Standard Towage Agreement                                                                                          7